**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDWARD CARREON, Jr. (M-35979), ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 12 C 4779 |
| ) | |
| ) | Judge Rebecca R. Pallmeyer |
| SUPERINTENDENT THOMAS, ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Edward Carreon, Jr., an Illinois prisoner currently confined at Stateville Correctional Center, brought this action pursuant to 42 U.S.C. § 1983 action concerning the conditions of his previous confinement at Cook County Jail. Naming Cook County Jail Superintendent Thomas as Defendant, Carreon alleges that the temperature in his cell during the winter months of 2011-12 was very cold. Currently before the court is Thomas' motion for summary judgment [24]. For the reasons stated here, the court grants the motion and dismisses this case.

### DISCUSSION

The standards governing a motion for summary judgment are familiar. Such a motion should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012) (internal quotations omitted). A genuine issue of material fact exists only if there is

evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

Consistent with this court's rules, Defendant filed a Local Rule 56.1(a)(3) Statement of Material Facts along with his summary judgment motion, citing evidentiary material in support of each statement [26]. Defendant also served on Plaintiff Carreon a Local Rule 56.2 Notice [25], explaining the requirements of Local Rule 56.1 and his need to respond to both the summary judgment motion and Defendant's Rule 56.1 Statement. In response to the summary judgment motion, Carreon submitted a one-page document which he labeled as his own motion for summary judgment [29]. The document summarizes Plaintiff's claim: that Superintendent Thomas was aware that inmates in Division 9 were exposed to very cold temperatures, yet ignored inmates' complaints. The court construes this submission as Plaintiff's response to Thomas' summary judgment motion. Because Carreon had not responded to Thomas' Rule 56.1 Statement in accordance with Local Rule 56.1(b)(3)(B), nor submitted a statement of additional facts pursuant to Local Rule 56.1(b)(3)(C), however, the court gave him additional time to supplement his response. Carreon has declined to do so. Accordingly, the facts set forth in Defendant's Local Rule 56.1(a)(3) Statement are deemed admitted and constitute the factual record on which the summary judgment motion will be resolved. *See* N.D. ILL. L.R. 56. 1 (b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

## **FACTS**

Carreon was admitted to Cook County Department of Corrections ("CCDOC") on December 3, 2011, and was assigned to Division 9, Tier 3E, Cell 3005, where he remained for the time relevant to this lawsuit. (Def. Statement of Facts [26] ¶ 4.) After filing this suit, he was transferred to Stateville. (*Id.* ¶ 1.) Plaintiff's cell at the CCDOC had cinderblock walls and was approximately 8 feet by 15 feet.

(*Id.* ¶ 6.) It had a window to the outside on the wall facing a door, and the door had two openings in it: a window and a chuckhole. (*Id.*) The cells on Plaintiff's tier surrounded a common dayroom. (*Id.*) The faucet in Carreon's cell produced warm water. He was generally allowed out of his cell twice a day and was able to take showers. (*Id.*).

Carreon began feeling cold in his cell in January of 2012. (*Id.* ¶ 7.) Carreon never got sick from the cold. (*Id.* ¶ 14.) He felt extremely cold on only two or three days a month until March of 2012, when the heat was either fixed or it got warm enough outside that he was no longer was cold. (*Id.* ¶¶ 10,13; Carreon Dep., Exhibit A to Def. Statement of Facts [26-1], at 36.) Carreon does not know the actual temperature in his cell on those days when it was very cold, but he recalls that he could see his breath. (*Id.* at ¶ 10.) When Carreon was cold, he wore long-sleeved thermal underwear, which he was able to purchase from the jail's commissary; a white shirt; his CCDOC jump suit, two pairs of socks and a skull cap. (*Id.* at ¶ 12.) When it was very cold in his cell, Carreon would cover up the vent blowing air into the room. (*Id.* ¶ 11.) Carreon was given a sheet and two blankets for his bed. He was also able to obtain extra blankets from other detainees, and to buy extra clothing from the commissary. (*Id.* ¶¶ 11,12.) When it was uncomfortably cold, Carreon wore clothing and crawled under his blankets; that would "do the trick"; he testified that "if you're inside the blanket, we're okay." (*Id.* ¶ 11; Carreon Dep. at 36, 37.)

Superintendent Thomas would come around the tier about once a month to check to make sure the conditions were up to standard. (*Id.* at ¶ 17; Carreon Dep. at 30.) Carreon testified that he complained personally to Thomas about the cold temperatures while Thomas was on the tier performing the inspection. (*Id.* at ¶ 17; Carreon Dep. at 30.)

Engineers at the jail conduct rounds three times each day to monitor and log temperature levels throughout the jail. (*Id.* at ¶ 20, citing Affidavit of Jim D'Amico, Director of Cook County Jail Facilites Management [26-3] (hereinafter "D'Amico Aff."), Exhibit C to Def. Statement of Facts, ¶ 5.) In Division 9, where Plaintiff was housed, the three daily temperature readings are taken from cells at the bottom

3

and the top of each tower of cells, as well as the location on the roof of the building where air is discharged. (Def. Statement of Facts ¶¶ 20, 21; D'Amico Aff. ¶ 6.) Each tower of cells consists of three floors and Carreon's tier, 3E, is at the top of his tower; Defendant reasons that if the temperature readings on the first floor, the third floor (tier 3E) and the air discharge are all within the acceptable range, then cells in between will be at an acceptable temperature, as well. (Def. Statement of Facts ¶ 21; D'Amico Aff. ¶ 6.) Temperature logs from December 2011 through March 2012 show that the cell temperatures throughout Division 9, and specifically on tier 3E, and the air discharged from the building, were always between the acceptable range of 67 to 78 degrees. (Def. Statement of Facts ¶ 22; D'Amico Aff. ¶ 7.)

Carreon testified that in the third week of February, in response to a grievance he filed, a Facilities Management technician inspected Carreon's tier to check the temperature. (*Id.* ¶ 9; Carreon Dep. at 19-21.) According to Carreon, the technician checked Carreon's tier and provided him with information consistent with Facilities Management Director D'Amico's affidavit; Carreon stated that the technician checked several areas of the tier and told Carreon that the temperature in the dayroom was 74 degrees. (Def. Statement of Facts ¶ 9; Carreon Dep. at 42.)

## **DISCUSSION**

Pretrial detainees are entitled to confinement under humane conditions which provide for their "basic human needs." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012) (citation omitted). "[T]he government may not, through deliberate indifference to a known risk of serious injury, deny [a pretrial detainee] 'adequate food, clothing, shelter, and medical care.'" *White v. Monohan*, 326 Fed. Appx. 385, 387 (7th Cir.2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, (1994)). The analysis is two-fold: (1) "we must determine whether the conditions at issue were sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities"; and (2) "[i]f the inmate successfully establishes that the conditions were sufficiently serious, we then examine whether prison officials acted with deliberate indifference to the

4

conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quotation marks and citation omitted). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* (quotation omitted). "The minimum intent required is actual knowledge of impending harm easily preventable." *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (quotation and emphasis omitted).

"A lack of heat, clothing, or sanitation can" amount to a constitutional violation. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Inmates have "a right to be free from extreme hot and cold temperatures." *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir.1986). In assessing whether that right has been violated, courts consider a number of factors, including "the severity of the cold or heat, its duration, whether the prisoner has alternative means to protect himself, and or harsh conditions." *Moore v. Monahan*, No. 06 C 6088, 2009 WL 310963, at *6 (N.D.Ill. Feb.9, 2009). The plaintiff must establish both that he was exposed to cold and that he lacked alternative means to keep warm. *See, e.g., Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir.1997) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir.1996) (no blankets); *Murphy v. Walker*, 51 F.3d 714, 720–21 (7th Cir.1995) (confinement to cell for days with no clothing, no heat, and no bed in mid-November); *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir.1991) (confinement in segregation cell with no additional clothing, malfunctioning heating system, broken window, subzero air temperature). "Moreover, it is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional." *Dixon*, 114 F.3d at 643.

Given the summary judgment evidence, no jury could find that Carreon was subjected to unconstitutionally cold conditions or that Superintendent Thomas acted with deliberate indifference. Carreon was exposed to very cold temperatures for only a few days each month during the winter of 2011-12. During those times, he wore long sleeve thermal underwear, a shirt, a jump suit, two pairs of socks and a cap. He was given a sheet and two blankets, was able to obtain extra blankets from

other detainees, and bought extra clothes from the commissary. On those days when it was extremely cold, he wore all of his clothes and got under all his coverings and would be "okay." (Carreon Dep. at 37.) Given the short durations of extremely cold temperatures and the means available to Carreon to protect himself, no jury could find that Carreon was subjected to unconstitutionally cold conditions during his confinement at the Cook County Jail.

Nor is there a basis for a finding of deliberate indifference. A member of the jail's Facilities Management staff checked the temperature in Carreon's area of the jail daily, and temperature readings were between 67 and 78 degrees. Even if Carreon could establish that temperatures in his cell generally were cold and, on several days each month, extremely cold, he cannot establish that Thomas, or any jail personnel, acted with deliberate indifference to his circumstances. In short, there are no disputes of material fact: Carreon can establish neither that he was subjected to unconstitutionally cold conditions nor, even if he was, that Thomas acted with deliberate indifference to such a condition.

## CONCLUSION

For the reasons stated above, Carreon's motion for summary judgment [29] is denied. The court grants Thomas' motion for summary judgment (24). Judgment is entered in favor of Defendant Thomas, and the complaint and this case are dismissed.

ENTER:

Dated: January 7, 2014

_____
REBECCA R. PALLMEYER
United States District Judge